UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OMAR ZANDER,

                Plaintiff,

-against-

THE CITY OF NEW YORK, JOSEPH PONTE, *New York City Department of Corrections ("DOC") Commissioner*, MARTIN J. MURPHY, *DOC Chief of Department*, JOHN DOE, *Former DOC Deputy Commissioner of Investigations Division*, CAROLINE SANDERS, *DOC Deputy Warden*, CAPTAIN JOHN ROGERS, JOHN DOE #1-2, *Correction Officers*,

                Defendants.

**OPINION AND ORDER**

17 Civ. 611 (ER)

Ramos, D.J.:

Omar Zanders[1] filed the instant excessive force action against the City of New York (the "City") and a number of people who work for the City's Department of Corrections ("DOC"). Doc. 1. Before the Court is Defendants' motion for summary judgment. Doc. 38. For the reasons stated below, Defendants' motion is GRANTED.

**I.  Background**

The City of New York, through the Department of Corrections ("DOC"), operates detention facilities in New York City, including the Otis Bantum Correctional Center (OBCC) at Rikers Island. Doc. 1, 4.

Joseph Ponte served as the Commissioner of the DOC. *Id.* He was responsible for: (1) the policy, practice, supervision, implementation, and conduct of all DOC matters; (2) the

---

[1] The Complaint spells Plaintiff's name "Omar Zander." Doc. 1, 1. In his deposition, the Plaintiff spelled his name, "Omar Zanders." Doc. 40-2, 4.

training, supervision, and conduct of all DOC personnel; (3) the care, custody, and control of all inmates housed in the DOC's detention facilities; and (4) the enforcement of all local, state, and federal laws.

Martin J. Murphy acted as the Chief of Department of the DOC. *Id.* at 5. Murphy, the highest-ranking uniformed member of the DOC, was responsible for supervising, overseeing, and disciplining uniformed security staff in all of the DOC detention facilities. *Id.*

Caroline Sanders was the Warden of the OBCC. Doc. 1, 5. She was responsible for supervising the OBCC's staff and ensuring the care, custody, and control of all inmates at the OBCC. *Id.*

The former Deputy Commissioner of the DOC's Investigation Division, sued as John Doe, was responsible for investigating and disciplining DOC employees for using force when their behavior violated DOC policy or rules. *Id.* at 5. He received daily reports of actual and alleged violence, rape, sexual assault, and security breach. *Id.* at 5. The Court, like Zanders, refers to Defendants Joseph Ponte, Martin Murphy, Caroline Sanders, and John Doe as the "Supervisory Defendants." Doc. 1, 6.

On December 13, 2015, Zanders, a twenty-nine-year-old man, was incarcerated at the OBCC, awaiting trial.[2] During a strip search, Correction Officer John Doe #1 asked Zanders to remove his clothes and repeatedly ordered him to bend down and squat. Doc. 40-2, 54–59. After complying with the second order to squat, Zanders asked to speak with Captain "John"[3]

---

[2] Defendants state, without citation, "he was already a convicted felon by the time his incident occurred." Doc. 39, 11. Zanders, in his complaint and deposition, refers to himself as a detainee. Doc. 40-2, 34. *See also* Doc. 1, 7 ("On December 13, 2015, Mr. ZANDER was incarcerated in the OBCC at Rikers Island awaiting trial for pending charges."). At oral argument held of March 25, 2019, counsel for the City and the Supervising Defendants clarified that Zanders had entered into a guilty plea prior to the incident herein, and was sentenced after the incident.

[3] Though named as "John" Rogers in the Complaint, Zanders does not dispute that this Defendant was sued as a John Doe. Coincidently, his actual name is John.

Rogers because "I didn't see why he asked me three times to conduct the same thing I complied with two times." Doc. 40-2, 59. A second Correction Officer, John Doe #2, responded by spraying Zanders' face with a chemical agent. *Id.* Unidentified officers then threw Zanders to the floor, tied his hands, punched and kicked him, and then inserted at least one finger into his anal cavity. *Id. See also* Doc. 40-2, 65 (Zanders testifying about the incident). Zanders asked for his clothes but "they told [him] to shut the F up, and sprayed [him] again and started assaulting [him]." *Id.* at 66. Rogers witnessed the attack. *Id.* at 73. The Court refers to Defendants John Rogers, John Doe #1, and John Doe #2 as the "Individual Defendants." Doc. 1, 6.[4]

As a result of these events, Zanders claims that he suffered pain, contusions, swelling, bruising, Post Traumatic Stress Disorder ("PTSD"), and burning of his eyes, nose, and mouth. Doc. 1, 7–8. Zanders alleges that, "[t]hrough DOC reports, civil litigation and national media broadcasting, the DOC has been aware of the routine, dangerous and unconstitutional use of excessive force by staff at the facilities under the control of the DOC." Doc. 1, 8.

On March 10, 2016, Zanders filed a notice of claim against the City. *Id.* at 3. On June 13, 2016, the City agreed that Zanders could commence this action before the City conducted a hearing or physical examination of Zanders. *Id.*

On January 26, 2017, Zanders filed the instant complaint, asserting seven claims: (1) a § 1983 claim against the Individual Defendants and the Supervisory Defendants for excessive use of force; (2) a § 1983 claim against the City for a policy, practice, and custom of excessive force; (3) an assault claim against the Individual Defendants and the City; (4) a battery claim against the Individual Defendants and the City; (5) a sexual assault claim against the Individual

---

[4] At the oral argument, counsel for the City represented, and counsel for Zanders did not dispute, that none of the Individual Defendants were properly served.

3

Defendants and the City; (6) an intentional infliction of emotional distress claim against the Individual Defendants and the City; and (7) a negligent hiring, training, disciplining, and retaining of employment services claim against the City. *Id.* at 9–14.

Defendants have moved for summary judgment on all claims but those brought against the John Doe Defendants. Doc. 38. Defendants have not provided a Rule 56.1 Statement, let alone any evidence, to support their motion.

In his opposition, Zanders attaches only two pieces of evidence: the transcript of his deposition, and an August 4, 2014 U.S. Department of Justice letter titled, "CRIPA[5] Investigation of the New York City Department of Correction Jails on Rikers Island" ("DOJ Letter"). Docs. 40-1, 40-2. The DOJ Letter concerns an investigation into the treatment of adolescent male inmates, between the ages of 16 and 18, at Rikers Island from 2011 to 2013. Doc. 40-1, 1-2. It specifically "focused on whether adolescents are subject to excessive and unnecessary use of force by DOC correction officers and their supervisors, whether DOC adequately protects adolescents from violence by other inmates, and whether DOC's extensive reliance on punitive segregation subjects adolescents to an excessive risk of harm." Doc. 40-1, 1-2. It "conclude[d] that there is a pattern and practice of conduct at Rikers that violates the constitutional rights of adolescent inmates" and that "adolescent inmates at Rikers are not adequately protected from harm, including serious physical harm from the rampant use of unnecessary and excessive force by DOC staff." Doc. 40-1, 3. The DOJ Letter clarified that its "focus on the adolescent population should not be interpreted as an exoneration of DOC practices in the jails housing adult inmates" and that its "investigation suggests that the systemic

---
[5] CRIPA stands for Civil Rights of Institutionalized Persons Act. Doc. 40-1.

deficiencies identified in this report may exist in equal measure at the other jails on Rikers." *Id.* The parties have provided no other evidence.

## II.     Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing, e.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).[6]

In deciding a motion for summary judgment, the Court construes the facts in the light most favorable to the nonmovant and resolves all ambiguities and draws all reasonable

---

[6] Zanders writes, "[m]oving defendants failed to provide their Statement of Material Facts pursuant to Local Civil Rule 56.1 and your Honor's Part Rules," and that, "[a]s such, pursuant to Local Civil Rule 56.1, defendants' motion should be denied in its entirety." Doc. 40, 2. "Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ('Local Rule 56.1') requires a party moving for summary judgment to submit 'a separate, short and concise statement' setting forth material facts as to which there is no genuine issue to be tried." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 72 (2d Cir. 2001). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Id.* at 73. Here, the Court will overlook Defendants' decision not to file a 56.1 Statement because the burden of proof at trial would fall on the nonmoving party in the instant case and because, under *Jaramillo*, "it ordinarily is sufficient" in such a circumstance "for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." 536 F.3d at 145 (citing *Celotex Corp.*, 477 U.S. at 322–23).

inferences against the movant. *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011). The nonmovant, however, may not rely on unsupported assertions or conjecture in opposing summary judgment. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Rather, the nonmovant "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 256–57 (1986)).

Finally, "[w]hile it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal quotation marks and citation omitted).

**III**. **Discussion**

Defendants have moved for summary judgment on the following claims: (1) the § 1983 claims against the Supervisory Defendants for excessive use of force; (2) the § 1983 claim against the City for a policy, practice, and custom of excessive force; (3) a claim against the City for negligent hiring, training, disciplining, and retaining of employment services;[7] and (4)

---

[7] Zanders brings claims against the City for negligent hiring, training, disciplining, and retaining of employment services. Doc 1, 10, 14. It is unclear whether he brings these claims under state or federal law. The Court reviews them under both federal and state law.

6

assault,[8] battery, and intentional infliction of emotional distress claims against the Supervisory Defendants.[9]

## A. 42 U.S.C. § 1983 Claims Against the Supervisory Defendants for Excessive Use of Force

Zanders asserts excessive force claims against the Individual Defendants and the Supervisory Defendants under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments. Doc. 1, 9. Defendants move for summary judgment on the claims brought against Ponte, Murphy, and Sanders for excessive use of force. Doc. 39, 11–15. In his opposition, Zanders does not contest this aspect of the motion for summary judgment, let alone mention Ponte, Murphy, or Sanders.

"[W]hen a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). Indeed, when a party fails "to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001).

---

[8] Defendants treat Zanders' assault and sexual assault claims analogously. Doc. 39, 9 n.2.

[9] Defendants have not moved for summary judgment on the claims brought against the John Doe Defendants, and as noted above, the three Individual Defendants, all sued as John Doe, have not been served. As many courts have held, "[w]here a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any effort to discover the [defendant's] name, however, the plaintiff simply cannot continue to maintain a suit against the John Doe defendant." *Coward v. Town & Vill. of Harrison*, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). *See also Warren v. Ewanciw*, No. 15 CIV. 8423 (JCM), 2019 WL 589488, at *5 (S.D.N.Y. Feb. 13, 2019) (following *Coward*); *Abujayyab v. City of New York*, No. 15 CIV. 10080 (NRB), 2018 WL 3978122, at *4 (S.D.N.Y. Aug. 20, 2018) (same); *T.R. by & through Yon-Rawls v. City of New York*, No. 15 CIV. 7582 (NRB), 2018 WL 3962830, at *5 (S.D.N.Y. Aug. 16, 2018) (same). Zanders filed suit more than a year ago, yet he has not amended his complaint to identify the John Doe Defendants, including Defendant John Rogers. The Court dismisses the claims brought against these unidentified Defendants.

The parties propose different tests for deciding these excessive force claims. Zanders claims that the Supervisory Defendants violated his rights under the Fourth and Fourteenth Amendments presumably because, on the day of the incident he was "awaiting trial for pending charges," Doc. 1, 7, and because "pretrial detainee's claims are evaluated under the Due Process Clause." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Defendants argue, on the other hand, that the Eighth Amendment should apply because "he was already a convicted felon by the time his incident occurred," Doc. 39, 11, and because "[i]n the context of a claim by a prisoner that he was subjected to excessive force by prison employees, the source of the ban against such force is the Eighth Amendment's ban on cruel and unusual punishments." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). Neither party cites to the record to support their view of Zanders' status on December 13, 2015.[10]

Under either test, Defendants win. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citation omitted). A plaintiff may satisfy the personal involvement requirement by providing evidence that the supervisor "(i) personally participated in the alleged constitutional violation, (ii) was grossly negligent in supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate indifference to the rights of the plaintiff by failing to act on information indicating that unconstitutional acts were occurring." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001). As Defendants argue, Zanders has not provided any evidence that Ponte, Murphy, or Sanders personally used any force against Zanders, were grossly

---

[10] At oral argument, the City clarified that Zanders entered into a plea of guilty *before* the incident, suggesting that he may have been convicted at the time of the incident. However, there is nothing in the record that establishes when the plea was accepted by the court. *Morris v. Reynolds*, 264 F.3d 38, 49-50 (2d Cir. 2001) (noting that a guilty plea becomes a conviction once the court accepts the plea).

negligent in supervising the officers who used force against him or failed to act on information indicating that unconstitutional acts were occurring. Doc. 39, 12–13. *Morgan v. Comm'r Dzurenda*, No. 14 Civ. 966 (VAB), 2015 WL 5722723, at *6 (D. Conn. Sept. 29, 2015) ("Supervisory officials cannot be held liable under section 1983 solely for the acts of their subordinates."). Indeed, Defendants assert that Zanders never even deposed these Supervisory Defendants. Doc. 39, 14.

## B. Policy, Practice, and Custom of Excessive Force

Although a municipality cannot be held liable under Section 1983 solely on a theory of *respondeat superior*, a Section 1983 claim may be brought against a municipality if the alleged unconstitutional action was the result of an official policy, practice or custom. *Monell*, 436 U.S. at 690–92. The Second Circuit has established a two-prong test for Section 1983 claims brought against a municipality. First, the plaintiff must prove "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official]." *Johnson v. City of New York*, No. 06 Civ. 9426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)). Second, the plaintiff must establish a causal connection between the policy or custom and the alleged deprivation of his constitutional rights. *Id*.

To satisfy the first prong of the municipal liability test, a plaintiff must allege the existence of at least one of the following elements: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation; (3) a practice so consistent and widespread that constitutes a custom or usage of which a supervising policy-maker must have

9

been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal citations omitted). "[I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012). Furthermore, "[m]unicipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," *Connick v. Thompson*, 563 U.S. 51, 61 (2011), and "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 412 (1997).

To satisfy the second inquiry of the municipal liability test, the "plaintiff must demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks omitted). A municipality is the moving force behind the alleged injury where there is "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018) (internal quotation marks and citations omitted). *See also Bd. of Cty. Comm'rs of Bryan Cty., Okl.*, 520 U.S. at 404 ("[P]laintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.").

In his complaint, Zanders attempts to satisfy these two requirements by alleging that at the time of the incident there had been numerous proven complaints of DOC staff members

routinely using unnecessary force and failing to accurately report such misconduct, as well as an unwillingness on the part of the DOC to investigate and meaningfully discipline this misconduct. Doc. 1, 8.

To substantiate these claims, Zanders points to his deposition and the DOJ Letter. Docs. 40-1, 40-2. As explained above, the DOJ Letter, even if it is admissible, focused on events between 2011 and 2013 and found "a pattern and practice of conduct at Rikers that violates the constitutional rights of adolescent inmates." Doc. 40-1, 3. It clarified that its "focus on the adolescent population should not be interpreted as an exoneration of DOC practices in the jails housing adult inmates" and that its "investigation suggests that the systemic deficiencies identified in this report may exist in equal measure at the other jails on Rikers." *Id.* The DOJ Letter also detailed episodes of unnecessary chemical sprays. *Id.* at 33, 65–66, 73.

Defendants claim that Zanders has not provided any evidence to satisfy either the first or second prong of *Monell*. Specifically, they claim that the DOJ Letter is insufficient to establish any evidence of an unconstitutional municipal policy or custom because it just includes allegations. The Letter dealt exclusively with adolescent inmates; Zanders was twenty-nine-years-old at the time of the incident. Doc. 39, 19–20.[11] They further note that Zanders will not be able to produce other evidence of a policy or custom because he has not deposed any policymakers under Rule 30(b)(6). Doc. 39, 24. They assert that because of these differences "[t]he U.S.D.O.J. 2014 Findings Letter does not support Plaintiff's contention that a municipal policy or custom was the moving force behind his constitutional harm." Doc. 43, 10.

---

[11] In their opening brief, Defendants also claim that a document that they describe as the *Nunez Consent Decree* does not show evidence of an unconstitutional policy or custom because the consent decree: (1) merely summarized allegations; (2) omitted any admission of liability; (3) narrowly addressed the alleged violations; (4) and provided that it "shall not be admissible against Defendants in any court for any purpose." Doc. 39, 19. Zanders did not reference the *Nunez Consent Decree* in his opposition.

11

Zanders responds to these arguments by directing the Court's attention to *White v. City of New York*, 2015 WL 4601121 (S.D.N.Y. July 31, 2015). Doc. 40, 9–12. In that case, a man in his mid-twenties claimed that correction officers at Rikers had attacked him in the fall of 2013 and that this attack was part of a larger policy or custom of excessive force. *Id.* In support of this claim, he pointed to newspaper reports, the same DOJ Letter relied on here and other similar lawsuits. *Id.* The City moved to dismiss the claim on the theory that the plaintiff had not sufficiently alleged a policy or custom of excessive force. *Id.* at *7. In particular, it argued, as Defendants argue here, that the DOJ Letter was insufficient because it focused on adolescents and because the plaintiff failed to plead any facts to suggest that the City failed to train or discipline the specific officer that allegedly attacked the plaintiff. *Id.* at **7–8. The Court rejected these arguments. It noted, "the parallels in the underlying conduct that is alleged to have occurred during the exact same time period at Rikers Island to be sufficiently similar to make plausible Plaintiff's claim that his injuries were caused by the same widespread practice detailed in the DOJ Findings Letter." *Id.*

However, *White*, and the other cases Zanders relies on, were adjudicated at the motion to dismiss stage. Indeed, *White* repeatedly emphasized the importance of the case's procedural posture and the possibility of coming to a different conclusion at a later stage in litigation: "Although the Court is cognizant that the DOJ's investigation was conducted within certain age parameters, the Court is not convinced that the distinctions make a difference *at this stage*;" "Although [Defendant's] arguments may find traction at summary judgment or at trial, the Court disagrees that they warrant dismissal at *this early stage*;" and "drawing such an inference *at this stage* would be inappropriate." *White*, 2015 WL 4601121, **7–9 (emphases added). Furthermore, as noted by Defendants, "*all* of the cases cited by Plaintiff pertain to court

decisions ruling on motions made pursuant to Rule 12(b)(6) – not the higher and more demanding Rule 56 standard." Doc. 43, 13. *See Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 545 (S.D.N.Y. 2015) (finding that "the DOJ Report appended to Plaintiff's Complaint [was] sufficient to allege a widespread practice" at the jail of providing "inadequate infection control; inadequate access to dental care; and an inadequate medical grievance process"); *Santiago v. Westchester County,* No. 13 Civ. 1886(LGS), 2014 WL 2048201, at *6 (S.D.N.Y. May 19, 2014) (denying municipality's motion to dismiss where plaintiff relied on the "results of the [DOJ investigation under the Civil Rights of Institutionalized Persons Act, which] allegedly concluded that the Westchester County Jail inadequately protected inmates from harm and use of excessive force by staff"); *Bektic–Marrero v. Goldberg,* 850 F.Supp.2d 418, 431 (S.D.N.Y.2012) (denying motion to dismiss *Monell* claim where prisoner's allegations of inadequate medical care were "distressingly reminiscent" of widespread problems identified in a government report); *Shepherd v. Powers,* No. 11 Civ. 6860(LTS), 2012 WL 4477241, at *10 (S.D.N.Y. Sept. 27, 2012) (denying motion to dismiss where plaintiff relied heavily on an investigatory report that "documented extensive constitutional deficiencies in the . . . protection of inmates against the use of excessive force").

At this stage, on summary judgment, it is incumbent on Zanders to come forward with admissible evidence that a municipal policy or custom was the moving force behind the actions that allegedly injured him. The DOJ Letter, which—in addition to addressing the adolescent population—focused on incidents between 2011 and 2013, does not suffice because the causal relationship between the 2013 allegations and the 2015 actions is too attenuated for the purposes of summary judgment. *See Plair v. City of New York*, 789 F. Supp. 2d 459, 466 (S.D.N.Y. 2011)

(dismissing an excessive force *Monell* complaint based on "two cases of violence that occurred several years prior to the alleged violence" and "reports from unspecified time periods").

C.  **State Claims for Negligent Hiring, Training, Disciplining, and Retaining of Employment Services**

Against the City, Zanders brings a claim for negligent hiring, training, discipline and retaining of employment services. Doc. 1, 14. Zanders does not specify whether he brings these claims under federal law or state law. To the extent that he brings these claims under federal law, the Court addressed them in the previous section. Insofar as Zanders brings these claims under state law, the Court resolves them here.

According to the Second Circuit's interpretation of New York law, a plaintiff who wishes to claim negligent retention must prove the standard elements of negligence and the following:

> (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels.

*Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (per curiam) (internal quotation marks and citations omitted). Furthermore, under New York law, "[w]here an employee is acting within the scope of his or her employment, the employer is liable under the theory of *respondeat superior* and no claim may proceed against the employer for negligent hiring or retention." *Rossetti v. Bd. of Educ. of Schalmont Cent. Sch. Dist.*, 716 N.Y.S.2d 460, 462 (N.Y. App. Div. 2000).

In Defendants' brief, they assert that Zanders' claim fails under the second prong of the test because he "cannot establish that Ponte, Murphy, or Sanders were tortfeasors responsible for Plaintiff's alleged harm." Doc. 39, 27. In his opposition, Zanders does not respond to this claim. The two pieces of evidence attached to Zanders' opposition, Zanders' deposition and the DOJ

Letter, do not establish the propensity of John Doe #1 or John Doe #2 to injure Zanders, let alone the Supervisory Defendants' knowledge of that propensity. As a result, the motion for summary judgment on this claim is GRANTED.

D.  **State Claims for Assault, Sexual Assault, Battery, and Intentional Infliction of Emotional Distress**

Zanders brings claims for assault, sexual assault, battery, and intentional infliction of emotional distress against the City and the Individual Defendants. Defendants move for summary judgment on these claims against the named Supervisory Defendants for failure to establish their personal involvement. Doc. 39, 25–26. Because Zanders has not brought these claims against the named Supervisory Defendants, Ponte, Murphy, and Sanders, the issue is moot and the Court need not decide it.

If Zanders had brought the assault, sexual assault, and battery claims against Ponte, Murphy, and Sanders, the claims would fail for the same reason Zanders' excessive force claims lacked merit under federal law. As the Second Circuit held in *Posr v. Doherty*, the "essential elements" for "§ 1983 use of excessive force and state law assault and battery" are "substantially identical." 944 F.2d 91, 94–95 (2d Cir. 1991).

If Zanders had brought the intentional infliction of emotional distress claims against Ponte, Murphy, and Sanders, those too would fail. "Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). Zanders has provided no evidence of Ponte's, Murphy's, or Sanders' conduct.

Defendants further argue that the Court should not exercise jurisdiction over the remaining state claims if the Court grants summary judgment on the federal claims. Doc. 39, 25. "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity, in deciding whether to exercise jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (internal quotation marks and citations omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). This is a usual case. Judicial economy, convenience, fairness, and comity weigh in favor of declining to exercise jurisdiction over these state claims.

**IV. Conclusion**

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED. Plaintiff never perfected service of "John" Rogers, John Doe #1, John Doe #2, or John Doe, the former DOC Deputy Commissioner of Investigations Division. The claims against these Defendants are therefore DISMISSED without prejudice. The Clerk of Court is respectfully directed to terminate the motion, Doc. 38, and close the case.

It is SO ORDERED.

Dated: March 28, 2019
New York, New York

Edgardo Ramos, U.S.D.J.